EVANDER, J.
William Bishop timely appeals from judgments and sentences for kidnapping a child under the age of thirteen (13),[1] lewd or lascivious molestation,[2] lewd or lascivious conduct,[3] lewd or lascivious exhibition,[4] and use of a child in a sexual performance.[5] We conclude that Bishop’s conviction for lewd or lascivious conduct violated his double jeopardy rights. We otherwise affirm.
The eight-year-old victim and her family were vacationing at the Disney Swan Hotel. The victim was playing by herself in a sandy area near the hotel’s pool. She testified that Bishop approached her and told her, “You’re a pretty girl. I have a girl next door to me that looks exactly like you.” Bishop was wearing an Hawaiian shirt and shorts and was holding a hand-held video camera. He briefly pulled his penis out over the top part of his shorts and then asked the victim if she wanted to see the water pipes to the pool’s waterfall. The victim responded “okay” and followed Bishop to a wooded area behind a storage shed. They both sat down and Bishop pointed his video camera at the lower part of the victim’s body as he rubbed her leg and genital area with his hand underneath her swimsuit bottom. The victim testified that the video camera appeared to be on.
The victim’s testimony was generally consistent with that of eleven-year-old David Silva. David and his family (apparently unrelated to the victim’s family) were also vacationing at the Swan Hotel. David testified that before his contact with the victim, Bishop had approached David’s younger sister and asked her if she could point out her parents to him. The younger sister ignored Bishop, but David informed his father of the incident and the two decided to “keep an eye” on Bishop.
Subsequently, David observed Bishop talking to the victim. He followed the two to the wooded area and observed Bishop apparently videotaping his act of rubbing the victim’s genital area. David told his father, who immediately alerted the lifeguards. Michael Charette, one of the lifeguards, saw Bishop on his knee with the victim next to him. The victim ran to her parents and Bishop walked quickly in the opposite direction. Charette observed Bishop adjusting his shorts and pressing buttons on the video camera. While pursuing Bishop, Charette ordered Bishop to stop “messing” with the camera, but Bish *78 op continued to do so. Bishop was subsequently detained by law enforcement officers, identified by the victim, and arrested. No images of Bishop’s molestation of the victim were recovered from the video camera. On the date of the aforedescribed events in question, Bishop was sixty-one years old.
On appeal, Bishop first contends that the trial court erred in denying his motion for judgment of acquittal on the kidnapping charge. Bishop argues that the State’s evidence failed to establish that the victim was forcibly (or by threat of force) confined or restrained by Bishop and, furthermore, that any movement of the victim by Bishop was only incidental to or inherent in the additional charged offenses. We reject these arguments.
The term “kidnapping” means “forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority” with the intent, inter alia, to commit or facilitate the commission of a felony. § 787.01(l)(a)2., Fla. Stat. (2006) (emphasis added). The term “secretly,” as used in the kidnapping statute, means that the abduction or confinement is intended by the defendant to isolate or insulate the intended victim from meaningful contact or meaningful communication with the public. Robinson v. State, 462 So.2d 471, 476 (Fla. 1st DCA 1984). It is not necessary that the movement of the victim be by force or threat of force. Id. Here, the State’s evidence was sufficient to establish that Bishop secretly abducted or confined the victim. He led the child to a secluded location, out of the view of those persons in or near the hotel’s pool, so as to isolate her from meaningful contact with the public. When, as in the present case, the victim is under the age of thirteen, the “against her or his will” element is met if the confinement is without the consent of the child’s parent or legal guardian. § 787.01(l)(b), Fla. Stat. (2006). Here, the victim’s father testified that Bishop did not have his permission to take his daughter.
Bishop’s contention that the evidence was insufficient to support a kidnapping conviction, pursuant to Faison v. State, 426 So.2d 963 (Fla.1983), also fails. In Faison, the Florida Supreme Court adopted a three-prong test to determine whether movement or confinement during the commission of another felony is sufficient to support an additional conviction for kidnapping. For a kidnapping conviction to stand, the resulting movement or confinement: 1) must not be slight, inconsequential, and merely incidental to the other offense; 2) must not be of the kind inherent in the nature of the other offense; and 3) must have some significance independent of the other offense in that it makes the other offense substantially easier to commit or substantially lessens the risk of detection. Id. at 965. In the instant case, the State’s evidence satisfied the requirements set forth in Faison. Bishop’s luring of the child away from a busy hotel pool area to a secluded wooded area behind a storage shed was not slight or inconsequential, was not inherent in the commission of lewd or lascivious acts against the child, and was clearly intended to lessen the risk of detection. See also Kent v. State, 702 So.2d 265 (Fla. 5th DCA 1997) (movement of victim from her front door to her bedroom where sexual battery occurred was sufficient to support conviction for kidnapping; movement was not slight nor merely incidental to sexual battery, was not inherent in crime of sexual battery, and made crime of sexual battery substantially easier to commit or lessened risk of detection given that front door had been broken).
*79 Bishop also challenges the denial of his motion for judgment of acquittal on the use of a child in a sexual performance charge. Section 827.071, Florida Statutes (2006), prohibits an individual from employing, authorizing, or inducing a child less than eighteen years of age to engage in a sexual performance. “Sexual performance” means any performance or part thereof which includes sexual conduct by a child of less than eighteen years of age. § 827.071(l)(h), Fla. Stat. (2006). “Performance” means “any play, motion picture, photograph, or dance or any other visual representation exhibited before an audience.” § 827.071(l)(b), Fla. Stat. (2006).
Bishop argued below that the State had failed to establish that any images of the child had been captured by his video camera. The trial court properly rejected this argument. David Silva testified that Bishop pointed the video camera at the lower part of the victim’s body while he rubbed her genital area, the victim testified that the video camera appeared to be on, and Bishop was observed pressing various buttons on the video camera as he tried to flee the scene. There was sufficient evidence for the jury to conclude that Bishop had videotaped the sexual conduct with the victim and had then deleted the images from his camera.
Bishop also contends that to obtain a conviction for using a child in a sexual performance, there must be evidence that the performance was exhibited before an audience. Florida courts have uniformly construed section 827.071 to permit a conviction even where the video tape of the child’s engagement in sexual conduct is not shown to third persons. See Ladd v. State, 715 So.2d 1012 (Fla. 1st DCA 1998) (making of motion picture or video tape that involves sexual conduct by child less than eighteen years of age is in and of itself sufficient to constitute performance); see also Killian v. State, 761 So.2d 1210 (Fla. 2d DCA 2000); Schmitt v. State, 563 So.2d 1095 (Fla. 4th DCA 1990), approved in part, quashed in part, on other grounds, 590 So.2d 404 (Fla.1991); Firkey v. State, 557 So.2d 582, 584 (Fla. 4th DCA 1989) (“we are confident that the -legislature did not intend that the creator of such a motion picture ... should escape prosecution because he had not, as yet, had the time to exhibit his vile handiwork.”), disapproved on other grounds, Wilson v. State, 635 So.2d 16 (Fla.1994). The statute, contrary to Bishop’s suggestion, does not require that the sexual performance be exhibited to third persons. An “audience” can consist of a single individual and that individual can be the defendant. State v. George, 717 S.W.2d 857 (Mo.Ct.App.1986) (defendant guilty of using child in sexual performance even where defendant was only member of audience); see also State v. Dube, Nos. Cl-01-1432, C3-01-1433, 2002 WL 1611116 (Minn.Ct.App. July 17, 2002).
Bishop next contends that double jeopardy principles prevent him from being adjudicated guilty of lewd or lascivious molestation or lewd or lascivious conduct, where the acts supporting these adjudications were also used to enhance his kidnapping conviction from a first degree felony to a life felony. We disagree. Section 787.01(3)(a), Florida Statutes (2006) provides that it is a life felony to kidnap a child under the age of thirteen when, in the course of committing the offense, the defendant commits:
3. Lewd or lascivious battery, lewd or lascivious molestation, lewd or lascivious conduct, or lewd or lascivious exhibition in violation of s. 800.04.
Significantly, section 787.01(3)(b) provides that “nothing contained herein shall be construed to prohibit the imposition of sep *80 arate judgments and sentences for the life felony described in paragraph (a) and for each separate offense enumerated in sub-paragraphs (a)l-5.”
Recently, the Florida Supreme Court reaffirmed that legislative intent is the polestar that guides the analysis in resolving double jeopardy issues. Valdes v. State, 3 So.Sd 1067 (Fla.2009). The constitutional protection found in the United States Constitution[6] and the Florida Constitution[7] do not prohibit multiple punishments for different offenses arising out of the same criminal transaction as long as the legislature intended to provide separate punishments. Id. at 1069. As the United States Supreme Court explained in Brown v. Ohio, 482 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), the double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the double jeopardy clause to define crimes and to fix punishments. Where multiple punishments are imposed at a single trial, “the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.” Id.
Significantly, in Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the United States Supreme Court stated that where a legislature specifically authorizes cumulative punishments under two statutes, regardless of whether those two statutes proscribe the “same” conduct under the Blockburger[8] test, the trial court may impose cumulative punishments pursuant to those statutes. Hunter involved the construction of a Missouri statute[9] that made it a separate criminal offense to commit a felony with the use of a dangerous or deadly weapon. The statute further provided that the punishment imposed for such crime would be in addition to any punishment provided by law for the commission of the underlying felony. Based on a single criminal transaction, appellant was convicted, after trial, of armed criminal action and armed robbery. The United States Supreme Court accepted the Missouri Supreme Court’s conclusions that 1) the two statutes at issue defined the same crime; and 2) the legislature intended that punishment for violation of the statutes be cumulative. The United States Supreme Court then upheld the dual convictions, concluding “that simply because two criminal statutes may be construed to proscribe the same conduct under the Blockburger test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes.” Id. at 368, 103 S.Ct. 673. The Hunter court further observed that legislatures, not courts, prescribe the scope of punishments and that the Missouri legislature had made its' intent crystal clear. Id.
*81 In the instant case, as in Hunter, the Legislature has made its intent crystal clear. An individual who kidnaps a child under the age of thirteen and who, in the course of the kidnapping, commits a lewd or lascivious act against the child may be adjudicated guilty of the lewd or lascivious act in addition to receiving a life felony sentence on the kidnapping offense.[10]
We do agree, however, with Bishop’s argument that double jeopardy principles preclude his conviction for both lewd or lascivious molestation and lewd or lascivious conduct. The lewd or lascivious molestation charge was based on Bishop’s act of touching the victim’s genital area while the lewd or lascivious conduct charge was based on Bishop’s act of touching the victim’s leg. The evidence reflected that the rubbing of the victim’s genital area and her leg occurred during a single continuous act. There was no testimony of a spatial or temporal break between the touchings. Accordingly, dual convictions were improper. J.M. v. State, 4 So.Sd 703 (Fla. 5th DCA 2009); see also Danestan v. State, 939 So.2d 1132 (Fla. 4th DCA 2006). On remand, the trial court shall vacate Bishop’s conviction for lewd or lascivious conduct.
AFFIRMED, in part; REVERSED, in part; REMANDED.
JACOBUS, J., concur.
COHEN, J., concurs and concurs specially with opinion.

. § 787.01(3)(a), Fla. Stat. (2006).

. § 800.04(5), Fla. Stat. (2006).

. § 800.04(6), Fla. Stat. (2006).

. § 800.04(7), Fla. Stat. (2006).

. § 827.071(2), Fla. Stat. (2006).

. "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb....” U.S. Const. Amend. V.

. "No person shall ... be twice put in jeopardy for the same offense....” Art. I, § 9, Fla. Const.

. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

. The Missouri statute provided:
[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance or aid of a dangerous or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance or aid of a dangerous or deadly weapon...."
Hunter, 459 U.S. at 362, 103 S.Ct. 673.

. We would also analogize this statute to Florida's application of the felony murder rule, to wit: a defendant can be convicted of both felony murder and the underlying felony even though the defendant’s commission of the underlying felony also serves to "enhance” an unlawful killing to first degree murder. The Florida Supreme Court has consistently found that double jeopardy principles do not preclude a defendant from being separately convicted and sentenced for felony murder and the qualifying felony. See, e.g., Lukehart v. State, 776 So.2d 906 (Fla.2000); Boler v. State, 678 So.2d 319 (Fla.1996); State v. Enmund, 476 So.2d 165 (Fla.1985). As stated concisely in Green v. State, 680 So.2d 1067, 1068 (Fla. 3d DCA 1996):
Simply put, defendant can be convicted of both felony murder and the qualifying felony because the felony murder statute says so.